IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DION BAKER,

          **Plaintiff,**

v.                                         1:12-cv-3247-WSD

DEKALB COUNTY, GEORGIA
et al.,

          **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment [40].

### I.  BACKGROUND

#### A.  Procedural History

On September 17, 2012, Plaintiff Dion Baker ("Plaintiff") filed this civil rights action against DeKalb County and DeKalb County police officers Ernest Banahene ("Banahene"), F. Garner ("Garner"), and J. C. Lovett ("Lovett") (collectively, "Defendants").  Plaintiff's claims arise from Plaintiff's detention and subsequent arrest by Banahene, Garner, and Lovett (collectively, the "Officers").  In his Complaint [1], Plaintiff asserts Fourth Amendment claims under 42 U.S.C. § 1983 for false arrest, malicious prosecution, and excessive force, and state law

claims for negligence and intentional infliction of emotional distress. On June 14, 2013, Defendants filed their Motion for Summary Judgment on all of Plaintiff's claims.

B.   Facts[1]

On September 18, 2011, the DeKalb County Police Department received a call about a "fight" in which the alleged victim's shoes and other belongings were stolen. (Resp. SUMF [54] ¶¶ 1–2.) The alleged victim reported the crime to Garner, a DeKalb County police officer who was working off-duty at a QuickTrip. (Id. ¶ 2.) The victim identified to Garner four men, present at the QuickTrip, as having been "involved" in the crime (the "suspects"). (Id.) Plaintiff was one of the suspects. (Id.) Lovett and Banahene, on-duty DeKalb police officers, responded to the call and went to the QuickTrip to investigate. (See id. ¶¶ 1, 4.)

---

[1] These facts are taken from the following statements of facts submitted in accordance with Local Civil Rule 56.1: Defendants' Statement of Material Facts [49-2] ("SUMF"), Plaintiffs' Response to Defendants' SUMF [54] ("Resp. SUMF"), and Plaintiffs' Statement of Additional Material Facts [49-2] ("SAMF"). Where a party disputed a factual assertion contained in a statement of facts, the Court also considered the specific exhibits cited in support of the assertion. See LR 56.1(B)(3), NDGa (providing that the court deems a party's SUMF citation as supportive of the asserted fact "unless the respondent specifically informs the court to the contrary in the response"). Defendants did not respond to Plaintiff's SAMF, and the Court thus deems supported all of the factual assertions contained in the SAMF that are not in conflict with the assertions contained in the SUMF. See LR 56.1(B)(3).

Based on Garner's report, Lovett ordered the suspects, including Plaintiff, to sit together on the curb.  (Id. ¶ 3.)

Banahene subsequently ordered Plaintiff to leave the curb and sit in Banahene's patrol car.  (Id. ¶ 4; SAMF [49-2] ¶ 2.)  The Officers each contend that Banahene issued this order because Plaintiff "began yelling and cursing."  (See Resp. SUMF [54] ¶ 4.)  Plaintiff denies that he ever yelled or cursed.  (See id.; SAMF [49-2] ¶ 1.)[2]  When Plaintiff stood up to go to the patrol car, Banahene forced Plaintiff's hands behind his back and pushed Plaintiff's face into the hood of the patrol car.  (SAMF [49-2] ¶ 2.)  Garner then grabbed Plaintiff's right arm, and Banahene grabbed Plaintiff's left arm.  (Id. ¶ 4.)  Banahene pushed down on Plaintiff's left arm with sufficient force that Plaintiff's humerus was fractured.  (Id. ¶¶ 4–5.)  The Officers contend that the amount of force used was because Plaintiff "resisted the attempt to handcuff him, and pulled his left arm away from Officer Banahene."  (Resp. SUMF [54] ¶ 4.)  Plaintiff denies that he resisted the Officers' attempts to handcuff him.  (Id.; SAMF [49-2] ¶ 3.)[3]

The Officers charged Plaintiff with obstruction.  (Resp. SUMF [54] ¶ 5.)

---

[2] An affidavit submitted by a witness, one of the other four suspects at the scene, corroborates Plaintiff's account.  (See Pl.'s Ex. 4 [50].)

[3] The witness affidavit corroborates Plaintiff's account.  (See Pl.'s Ex. 4 [50].)

3

The DeKalb County Solicitor's Office subsequently dropped the charge. (SAMF [49-2] ¶ 8.)[4]

## II.   DISCUSSION

### A.   Legal Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Parties "asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State

---

[4] Plaintiff was determined not to have been involved in the fight and robbery the Officers were investigating, and he was never charged in connection with that incident. (SAMF [49-2] ¶ 6.)

4

Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  Non-moving parties "need not present evidence in a form necessary for admission at trial; however, [they] may not merely rest on [their] pleadings."  Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must draw all inferences in favor of the non-movant, but only "to the extent supportable by the record."  Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

    B.    <u>Analysis</u>

        1.    *Section 1983 False Arrest Claims Against the Officers*

In his § 1983 false arrest claims, Plaintiff contends that, when he was arrested for obstruction, the Officers violated his Fourth Amendment right to be free from "unreasonable searches and seizures."  Under the Fourth Amendment, an

5

arrest is a "seizure" of a person, and whether an arrest is reasonable depends on whether there is probable cause for the arrest. California v. Hodari D., 499 U.S. 621, 624 (1991); United States v. Floyd, 281 F.3d 1346, 1348 (11th Cir. 2002) (per curium). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." Floyd, 281 F.3d at 1348. The probable cause standard is practical and non-technical, and is applied in a specific factual context considering the totality of the circumstances. Skop v. City of Atlanta, Georgia, 485 F.3d 1130, 1137 (11th Cir. 2007) (citing Maryland v. Pringle, 540 U.S. 366, 370 (2003)).

Even if a law enforcement officer makes an arrest without probable cause, he may still retain the defense of qualified immunity. "It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials . . . should not be held personally liable." Anderson v. Creighton, 483 U.S. 635, 641 (1987). In the Eleventh Circuit, the standard in such cases is "arguable probable cause," that is, whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest." Lee v. Ferraro, 284 F.3d 1188,

1195 (11th Cir. 2002). Whether an arresting official has probable cause or arguable probable cause depends on the elements of the alleged crime. Crosby v. Monroe, 394 F.3d 1328, 1333 (11th Cir. 2004).[5]

In this case, Plaintiff was arrested for obstruction of a law enforcement officer under O.C.G.A. § 16-10-24(a), which provides that "a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor." Defendants argue that the Officers had at least arguable probable cause to believe that Plaintiff was guilty of obstruction because, according to the Officers, Plaintiff was "yelling and cursing" and physically resisting their efforts to detain him during their investigation of the fight and robbery. See State v. Stafford, 653 S.E.2d 750, 754–55 (Ga. Ct. App. 2007) (explaining that obstruction under § 16-10-24(a) includes attempts to hinder an officer from detaining a suspect for investigative purposes). Plaintiff disputes that he was "yelling and cursing" and disputes that he resisted the Officers' attempts to detain him. For purposes of Defendants' Motion for Summary Judgment, the Court is required to view the evidence in the light most

---

[5] The qualified immunity defense also requires a threshold showing that the official "was performing a 'discretionary function' at the time the alleged violation of federal law occurred." Crosby v. Monroe, 394 F.3d 1328, 1332 (11th Cir. 2004). The parties do not dispute that the Officers were performing "discretionary functions" during the events at issue in this action.

favorable to Plaintiff and to draw all inferences in favor of Plaintiff.  See Garczynski, 573 F.3d 1165.  Doing so, the Court cannot conclude that the Officers are entitled to judgment as a matter of law.  Considering the differing versions of events offered by Plaintiff and the Officers, the Court determines there is a genuine dispute regarding whether there was probable cause, or arguable probable cause, for the arrest, and Defendants' Motion for Summary Judgment on Plaintiff's § 1983 false arrest claims against the Officers is therefore denied.[6]

### 2. *Section 1983 Malicious Prosecution Claims Against the Officers*

In his § 1983 malicious prosecution claims, Plaintiff contends that the Officers violated his Fourth Amendment rights by initiating his prosecution for obstruction.  "To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures."  Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th

---

[6] Defendants presented a joint argument that Plaintiff's arrest was made on at least arguable probable cause.  Defendants did not show, or even argue, that not all of the Officers participated in the arrest.  The Court notes that, on the record presented by the parties, Defendant Lovett does not appear to have participated in the arrest, and Plaintiff's claims against Lovett may not be viable.  Because Defendants do not seek the dismissal of only Lovett and Plaintiff was not afforded the opportunity to oppose the dismissal of only Lovett, the Court does not consider here the sufficiency of Plaintiff's claim against Lovett.

8

Cir. 2004) (citing Wood v. Kesler, 323 F.3d 872, 881 (11th Cir. 2003)).  Under Georgia law, the elements of the tort of malicious prosecution include "want of probable cause."  See Ye v. Kroger Co., 556 S.E.2d 879, 880 (Ga. Ct. App. 2001) (citing Medoc Corp. v. Keel, 305 S.E.2d 134, 136 (1983)); see also Kingsland, 382 F.3d at 1234 (applying the relevant state law to determine the elements of the tort of malicious prosecution).  Defendants argue that, for the same reasons they contend the Officers had probable, or arguable probable, cause to arrest Plaintiff, the Officers were justified to initiate Plaintiff's prosecution.  As discussed above, the facts establishing the Officers' probable cause, or arguable probable cause, are in dispute.  Defendants' Motion for Summary Judgment on Plaintiff's § 1983 malicious prosecution claims against the Officers is thus denied.[7]

   3. *Section 1983 Excessive Force Claims Against the Officers*

In his § 1983 excessive force claims, Plaintiff contends that the Officers used excessive force, in violation of the Fourth Amendment, in handcuffing him and breaking his arm.  "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of

---

[7] Defendants have not shown, or even argued, that the undisputed facts in the record fail to establish any other element of malicious prosecution or otherwise entitle the Officers to qualified immunity on Plaintiff's malicious prosecution claims.

excessive force in the course of an arrest." Brown v. City of Huntsville, 608 F.3d 724, 737 (11th Cir. 2010) (quoting Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002)). The Fourth Amendment allows "some degree of physical coercion" to carry out an arrest or investigatory stop, but the force must be reasonable based on "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 737–38 (quoting Lee, 284 F.3d at 1197; Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002)); accord Graham v. Connor, 490 U.S. 386, 395–96 (1989). Even if, in hindsight, the use of force was not reasonable, a law enforcement officer receives qualified immunity for use of force during an arrest "if an objectively reasonable officer in the same situation could have believed the use of force was not excessive." Brown, 608 F.3d at 738.[8]

To evaluate the reasonableness of the use of force, "a court must evaluate several factors, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (quoting Vinyard, 311 F.3d at 1347) (internal quotation marks omitted). In this

---

[8] As noted above, the parties do not dispute that the threshold showing for qualified immunity—that the Officers were performing "discretionary functions"—is satisfied. See Crosby, 394 F.3d at 1332.

case, Defendants argue that the second and third factors support at least qualified immunity for the Officers because, they claim, Plaintiff resisted being handcuffed and thereby posed a risk to the Officers.[9]  As the Court already has noted, Plaintiff disputes that he resisted the Officers' attempts to handcuff him.  Construing the evidence here in the light most favorable to Plaintiff, as the Court is required to do, the Court cannot conclude, as a matter of law, that an objectively reasonable police officer would have believed that force sufficient to break Plaintiff's arm was not excessive.[10]  See Brown, 608 F.3d at 738; see also Lloyd v. Van Tassell, 318 F. App'x 755, 758–59 (11th Cir. 2009) (reversing summary judgment for officer because, under plaintiff's version of events, plaintiff was compliant and not resisting when officer applied sufficient force to break plaintiff's nose); Danley v. Allen, 540 F.3d 1298, 1309 (11th Cir. 2008) (explaining that, under the Eighth

---

[9] Defendants do not argue that the severity of Plaintiff's alleged crime weighs in favor of finding reasonableness.

[10] Citing Rodriguez v. Farrell, 280 F.3d 1341 (11th Cir. 2002), Defendants further argue that Plaintiff's broken arm may have resulted from an underlying weakness in Plaintiff's arm.  In Rodriguez, a police officer severely aggravated the plaintiff's pre-existing arm injury in applying a "common and ordinarily accepted" method of handcuffing.  280 F.3d at 1351.  The Eleventh Circuit held that the officer could not be liable because he lacked knowledge of the plaintiff's underlying injury.  Id.  In this case, the record does not contain any evidence that Plaintiff suffered any pre-existing condition or that the Officers were unaware of such a condition.  Defendants' speculation is not sufficient to show that Rodriguez applies here.  See Garczynski, 573 F.3d at 1165.

11

Amendment, the use of substantial force against a compliant prisoner is excessive), overruled on other grounds by Randall v. Scott, 610 F.3d 701 (11th Cir. 2010). Defendants' Motion for Summary Judgment on Plaintiff's § 1983 excessive force claims against the Officers is denied.[11]

### 4. *Section 1983 Claims Against the County*

The Supreme Court has placed strict limitations on the liability of local governments under § 1983. A city or county's liability under § 1983 may not be based on the doctrine of respondeat superior. City of Canton v. Harris, 489 U.S. 378, 385 (1989); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A local government is "liable under section 1983 only for acts for which the local government is actually responsible." Marsh v. Butler County, 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc). Thus, local government liability may be established based on: (1) an express policy; (2) a "widespread practice that, although not authorized by written law or express policy, is 'so permanent and well settled as to

---

[11] As with Plaintiff's other claims, Defendants presented a joint argument that the use of force in Plaintiff's arrest was constitutional. Defendants did not show, or even argue, that not all of the Officers participated in the arrest. As noted above, the record presented by the parties does not show that Defendant Lovett participated in the arrest, and Plaintiff's claims against Lovett may not be viable. Because Defendants do not seek the dismissal of only Lovett and Plaintiff was not afforded the opportunity to oppose the dismissal of only Lovett, the Court does not consider here the sufficiency of Plaintiff's claim against Lovett.

constitute a custom or usage' with the force of law"; or (3) the decision of a person with "final policymaking authority." Monell, 436 U.S. at 694; City of St. Louis v. Praprotnik, 485 U.S. 112, 123 and 127 (1988). Counties are also immune in a § 1983 action from punitive damages. City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981).

Defendants argue that the record in this case does not contain evidence to support that DeKalb County is liable. The Court agrees. Plaintiff has not submitted any evidence of policies or customs of DeKalb County, let alone evidence of policies or customs that promote the violation of the constitutional rights Plaintiff alleges are at issue here. See Monell, 436 U.S. at 694.[12] Plaintiff also has not submitted evidence showing that the alleged violations at issue in this case resulted from the decision of a person with "final policymaking authority." See id. Defendants are entitled to summary judgment on Plaintiff's § 1983 claims

---

[12] In his brief, Plaintiff argues that (i) the Officers admitted that their actions were in accordance with DeKalb County policy and (ii) DeKalb County failed to provide the Officers with updated training materials on their constitutional obligations. These factual assertions are not contained in Plaintiff's SAMF, and the Court does not consider them. See LR 56.1(B)(1), NDGa ("The court will not consider any fact . . . set out only in the brief and not in the movant's statement of undisputed facts."); LR 56.1(B)(2)(b), NDGa (providing that that Local Rule 56.1(B)(1) applies equally to the non-movant's statement of additional facts).

asserted against DeKalb County.

### 5. *State Law Claims Against the Officers*

Defendants seek summary judgment on Plaintiff's state law claims against the Officers on the basis of official immunity. Under the Georgia Constitution, "all officers and employees of the state or its departments and agencies . . . may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions." Ga. Const. art. I, § 2, ¶ IX. Thus, "public officials are immune from individual liability for discretionary acts undertaken in the course of their duties and without wilfulness, malice, or corruption." Schmidt v. Adams, 438 S.E.2d 659 (Ga. Ct. App. 1993).

> This official immunity is intended to protect public officials in the honest exercise of their judgment, however erroneous or misguided that judgment may be. "Otherwise, not only would it be difficult to get responsible men to fill public office, but there would be constant temptation to yield officially to unlawful demands, lest private liability be asserted and enforced."

Id. at 660 (quoting Price v. Owen, 19 S.E.2d 529, 531 (Ga. Ct. App. 1942)). "Actual intent to cause injury" has been defined in the tort context to mean "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury. . . . This definition of intent contains aspects of malice, perhaps a wicked or evil motive." Kidd v. Coates, 518 S.E.2d 124, 125 (Ga. 1999) (citations and quotation marks omitted). "Unlike qualified

14

immunity under federal law, we must inquire into [the public official's] subjective intent to determine whether he has official immunity under Georgia law." Jordan v. Mosley, 487 F.3d 1350, 1357 (11th Cir. 2007).

To avoid summary judgment on official immunity, Plaintiff is required to produce some evidence of the Officers' malice or intent to injure Plaintiff. See Peterson v. Baker, 504 F.3d 1331, 1339 (11th Cir. 2007) (citing Adams v. Hazelwood, 520 S.E.2d 896, 899 (Ga. 1999)) ("Even though the official immunity inquiry involves an examination of the [defendant's] state of mind, we may still decide this issue at the summary judgment stage if Plaintiff fails to produce evidence of actual malice or of an intent to cause injury."). Plaintiff has not produced any evidence of the Officers' states of mind but simply asserts that a genuine dispute exists for the same reasons a dispute exists with respect to Plaintiff's § 1983 claims. As discussed above, a dispute exists with respect to the § 1983 claims because Plaintiffs' and the Officers' diverging accounts prevent the Court from deciding the reasonableness of the Officers' actions. Plaintiffs' constitutional claims do not turn on the Officers' subjective intent, and the remaining factual disputes with respect to those claims are not relevant to the Officers' official immunity. Defendants are thus entitled to summary judgment on

Plaintiffs' state law claims against the Officers.[13]

### III. CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [40] is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** with respect to all of Plaintiff's claims against DeKalb County and Plaintiff's state law claims against the Officers. It is **DENIED** with respect to Plaintiff's claims against the Officers under 42 U.S.C. § 1983.

**SO ORDERED** this 27th day of February, 2014.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[13] Defendants also seek summary judgment on Plaintiff's state law claims against DeKalb County on the basis of governmental immunity. Plaintiff did not oppose, or otherwise respond to, Defendants' argument. The Court concludes that Plaintiff has abandoned his state law claims against DeKalb County, and Defendants' Motion for Summary Judgment on the claims is granted. See St. Andrews Presbyterian Coll. v. S. Ass'n of Colls. & Sch., 679 F. Supp. 2d 1320, 1334–35 (N.D. Ga. 2009) (citing Bute v. Schuller Int'l, Inc., 998 F. Supp. 1473, 1477 (N.D. Ga. 1998); Welch v. Delta Air Lines, Inc., 978 F. Supp. 1133, 1137 (N.D.Ga.1997)) ("Failure to respond to an opposing party's arguments regarding a claim constitutes abandonment of that claim, and warrants dismissal of the abandoned claim."); see also LR 7.1(B), NDGa ("Failure to file a response shall indicate that there is no opposition to the motion.").